Keith Wood (CA State Bar No. 272440)
Jason W. Harrel (CA State Bar No. 186056)
Calone & Harrel Law Group, L.L.P.
1810 Grand Canal Blvd., Suite 6
Stockton, CA 95207-8110
(209) 952-4545 telephone
(209) 952-8751 fax

**Attorneys for Creditor Panella Properties, Ltd.**

### UNITED STATES BANKRUPTCY COURT FOR THE
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re:** | Case No.: 16-27672 |
| **DAVID K. LIND** | DCN: GMW-2 |
| **Debtor.** | **CREDITOR PANELLA PROPERTIES, LTD'S, OPPOSITION TO DEBTOR'S MOTION TO CONVERT CHAPTER 12 CASE TO CHAPTER 11** |
| | <u>Hearing:</u> |
| | DATE: February 1, 2017 |
| | TIME: 10:00 a.m. |
| | PLACE: Courtroom 34 |
| | Judge: Honorable Robert S. Bardwil |

Creditor PANELLA PROPERTIES, Ltd., (hereinafter "Panella"), respectfully submits this Opposition to Debtor's Motion to Convert Chapter 12 Case to Chapter 11 (this "Opposition").

This Opposition is based on the arguments set forth herein, the Declaration of Robert Panella in Support of Creditor Panella Properties, Ltd's, Opposition to Debtor's Motion to Convert Chapter 12 Case to Chapter 11 (the "Panella Declaration"), filed concurrently herewith and incorporated herein by reference, and such other oral argument as may be required at a hearing on this matter. This Opposition respectfully represents the following:

## I. INTRODUCTION

Debtor, David K. Lind (hereinafter "Debtor"), has represented to the Court that there is a current sale pending for the property located at 23281 N. Davis Road, Lodi, CA (the "Davis Road Property") and that due to the pending sale of the Davis Road Property Debtor should be permitted to convert this case from a case under Chapter 12 to a case under Chapter 11. Creditor Panella is the buyer in the transaction for the Davis Road Property. Debtor's Motion to Convert Chapter 12 Case to Chapter 11 ("Debtor's Motion to Convert") should be denied because the Debtor's Chapter 12 case was not filed in good faith and a conversion to Chapter 11 would not be in the best interests of Creditors. Due to the requirements in order to complete an Internal Revenue Code § 1031 like-kind exchange ("tax exchange"), Panella cannot continue to wait for Debtor to close the escrow on the Davis Road Property if this case is converted to Chapter 11. Based on the Debtor's filing history, there is no reason to believe Debtor will prosecute the Chapter 11 case in a timely manner in order for Panella to purchase the property prior to the expiration of his tax exchange. Accordingly, Debtor's Motion to Convert should be denied and the Trustee's Motion to Dismiss, set for hearing at the same time and date as the Debtor's Motion to Convert, should be granted. Further, due to Debtor's bad faith filing and Debtor's stated intention to file a fourth bankruptcy case as soon as this case is dismissed, the Court should bar the Debtor from future filings for 180 days. If the Court grants Debtor's Motion to Convert, such conversion should be conditioned upon Debtor completing the sale of the Davis Road Property by February 28, 2017. After Febraury 28, 2017, Panella will not be able to continue with the sale as Panella's tax exchange deadline will be approaching and Panella will be forced to pursue a purchase of a different replacement property.

## II. FACTUAL BACKGROUND

On August 16, 2016 Debtor, David K. Lind (the "Debtor"), and his spouse, Deneille Lind (the "Debtor's Spouse") entered into an agreement to sell the property located at 23281 N. Davis Road, Lodi, CA (the "Davis Road Property") to Panella for a purchase price of Three Million Four Hundred Thirty-Two Thousand Five Hundred Fifty Dollars ($3,432,550.00). Panella Declaration, ¶

4. The Davis Road Property was defined as being "based on 86.9 acres and will be adjusted to actual acres conveyed to Buyer at $39,500.00 per acre." *Id.* at ¶ 5. Pursuant to the terms of the Purchase Agreement, escrow was to close within ten (10) days. *Id.* at ¶ 6. Panella's purchase of the Davis Road Property represented the Panella's intent to use the purchase as part of a tax exchange under Internal Revenue Code § 1031, which intent was communicated to Debtor and Debtor understood and acknowledged such intent by signing a "Buyer's Intent to Exchange Supplement." *Id.* at ¶ 7.

      In order to complete the tax exchange, Panella must close on the replacement property (i.e. the Davis Road Property or another property Panella has identified) by May 1, 2017. *Id.* at ¶ 8.

      Shortly after entering into the Purchase Agreement, Panella learned Debtor had previously entered into an agreement to sell 7.44 acres of the Davis Road Property to creditor James Dobbins or an entity of James Dobbins' (hereinafter collectively referred to as "Dobbins") (Debtor lists the creditor as "James Dobbins" on his Schedule D, however, Panella understands the obligation to be owed to an entity or trust of James Dobbins'). *Id.* at ¶ 9. The agreement to sell the 7.44 acres to Dobbins was secured (along with other monetary obligations) in a promissory note and a First and Second Deed of Trust recorded against the Davis Road Property. *Id.* at ¶ 10. From correspondence received from Dobbins, Panella understands that Dobbins is unwilling to release his interest in the 7.44 acres, pursuant to the previous agreement to purchase the 7.44 acres, or the Second Deed of Trust against the Davis Road Property unless Debtor fulfills his obligation to transfer the 7.44 acres to Dobbins through a previously agreed to lot line adjustment. *Id.* at ¶ 11. Based on the terms of the promissory note and Second Deed of Trust, upon the lot line adjustment Debtor will be credited with most of the balance owed against the Second Deed of Trust.

      Panella sent Debtor a demand to close escrow on October 25, 2016, providing Debtor three days to close the escrow for the Purchase. Debtor failed to act upon the demand to close escrow. *Id.* at ¶ 12.

Debtor has informed Robert Panella, who is the manager of Panella's general partner, that Debtor does not intend to sell the Davis Road Property as long as he has to transfer the 7.44 acres to Dobbins. *Id.* at ¶ 13. Based on this representation from Debtor to Panella and the fact that the escrow for the Davis Road Property has been pending since August, Panella has very little belief that Debtor will actually carry through with Debtor's obligation to sell the Davis Road Property pursuant to the purchase agreement. *Id.* at ¶ 14.

If the escrow on the Davis Road Property does not close by February 28, 2017, Panella will have to terminate the agreement to purchase the Davis Road Property in order to pursue an alternate replacement property to complete Panella's tax exchange. *Id.* at ¶ 16. Panella has served Debtor with a new demand to close escrow by February 28, 2017 or the purchase agreement will be terminated by Panella. *Id.* at ¶ 15.

On November 18, 2016, Debtor filed the instant voluntary Chapter 12 petition. After a Trustee's Motion to Dismiss, the Debtor filed the instant Debtor's Motion to Convert.

The Debtor has two previous bankruptcy filings. Panella requests the Court take judicial notice pursuant to Federal Rules of Evidence § 201 of the dockets, pleadings, filings and orders in the Court's possession (through the Court's electronic Pacer system) of Debtor's previous two bankruptcy filings: 1) a Chapter 12 case (case no. 13-31379) filed on August 29, 2013 and dismissed on April 10, 2014; and 2) a Chapter 11 case (case no. 14-22832) filed on March 20, 2014 and dismissed on May 5, 2015. Debtor has been represented in all three bankruptcy cases by the same attorney.

### III. LEGAL ARGUMENT

As referenced in Debtor's Motion to Convert there is a split of authority amongst the jurisdictions as to whether a Debtor may convert a Chapter 12 case to a case under Chapter 11. Some jurisdictions have denied such a motion to convert holding that there is no right to convert from Chapter 12 to Chapter 11 in the Bankruptcy Code. *See generally In re Christy*, 80 B.R. 361 (Bankr. E.D. Va. 1987). Other jurisdictions have held that conversion from Chapter 11 to Chapter

12 may be granted where "the Debtor has filed in good faith, there is no prejudice to the creditors, and such conversion would be equitable." *In re Miller*, 177 B.R. 551, 553 (Bankr. N.D. Ohio 1994). Panella is unaware of any decisions within the instant jurisdiction that may be binding upon this Court.

Pursuant to 11 U.S.C § 1107 (hereinafter all references to a "Section" are references to the Bankruptcy Code of 11 U.S.C.) the debtor in possession has substantially all the powers of a trustee. Pursuant to § 363 the debtor may move to sell estate property outside the ordinary course of business with court approval. The Debtor has the exclusive authority to file a plan for the initial 120 days after the date of order for relief. § 1121(b). At any time after the commencement of the Chapter 11 case a party in interest may request the appointment of a trustee by filing a noticed motion. § 1104(a).

Pursuant to § 109(g)(1) the court may bar the Debtor from filing a future bankruptcy for a period of 180 days where the instant case is dismissed for willful failure of the debtor to abide by orders of the court. The court may "infer from a pattern of dismissals and refilings in unchanged circumstances willful failure to abide by orders of the Court." *In re McIver*, 78 B.R. 439, 442 (D SC 1987). *See also In re Nelkovski*, 46 B.R. 542, 544 (Bankr, N.D. Ill. 1985). Additionally, the court may bar a Debtor from filing a future bankruptcy under the Court's equitable powers outlined in § 105(a).

**1. Debtor's Motion to Convert Should be Denied and Debtor's Case Dismissed With a Bar on refiling for 180 Days**

Debtor's instant case was not filed in good faith and conversion to Chapter 11 would not be in the Creditor's best interests. Further, due to Debtor's filing history, if Debtor's case is dismissed the Court should bar the Debtor from refiling for a period of 180 days due to Debtor's stated intention to refile upon dismissal.

    A.    <u>Permitting Debtor to Convert Debtor's Case to Chapter 11 would prejudice Creditors.</u>

Based on the Debtor's filing history, permitting Debtor to convert Debtor's case to Chapter 11 would highly prejudice creditors as it would permit Debtor to further delay and stall creditor actions without any true possibility of satisfying Debtor's obligations to Creditors. Debtor's filing history evidences his use of the bankruptcy court to stall, delay, and hinder creditors without any true intention of using the relief afforded under the Bankruptcy Code.

The Debtors two most recent cases best evidence the Debtor's intentions. In the Debtor's last bankruptcy filing, a Chapter 11 filing filed on March 20, 2014, the Debtor failed to file his required schedules even though the Debtor had filed a previous bankruptcy no less than seven (7) months earlier. Instead the Debtor requested an extension to file the required documents and once denied never filed any of the Debtor's schedules, notwithstanding the fact that Debtor had just filed the required schedules in Debtor's first bankruptcy case only seven (7) months prior. In the instant case, Debtor filed a Chapter 12 petition even though 1) the Debtor concedes that the Debtor's debt exceeds the jurisdictional limits for a Chapter 12 case; and 2) the Debtor has no farming income (an allegation in the Trustee's Motion to Dismiss to which the Debtor has not responded). The Debtor filed the instant Chapter 12 notwithstanding the fact that Trustee Jan Johnson had raised the argument that Debtor had no farming income in order to qualify for Chapter 12 in Debtor's previous Chapter 12 filing.

Given Debtor's filing history, it is improbable to expect that Debtor will make the required motions to sell the property prior to Panella's tax exchange deadline (May 1, 2017) upon conversion to Chapter 11. Based on Debtor's filing history, it can be assumed Debtor will wait the full 120 days to file a Chapter 11 plan in a further effort to delay and hinder creditors.

Further, with no such assurances that Debtor will act promptly Panella will be forced to pursue a different replacement property in order to complete Panella's tax exchange leaving the Debtor with no current purchaser of the property. Further, even if Panella or a interested party moved for a trustee to be appointed, such an action would require a noticed motion and potential oppositions from the Debtor, as to the appointment of a trustee, and oppositions from other

creditors, as to the party elected for appointment as trustee.  Thereafter, once a trustee is elected the trustee will have a very narrow window to bring a motion to sell the Davis Road Property prior to Panella's tax exchange.

Based on the above, there is no reason to believe that a conversion to Chapter 11 is in the best interests of Creditors.  If the case is converted to Chapter 11 there is all but no chance the sale of the Davis Road Property will be accomplished prior to Panella's tax exchange deadline.  At which time the Debtor will have no buyer of the property and creditors will have been hindered and delayed for an additional 120 days or longer without any progress toward satisfaction of their debts.

      B.    <u>Debtor's Chapter 12 Case was Not Filed in Good Faith</u>

Debtor's Motion to Convert should be denied because Debtor's filing of the Chapter 12 petition in the instant case was not filed in good faith.  Debtor has already conceded that Debtor is not eligible to be a debtor in a Chapter 12 case as Debtor's debts exceed the jurisdictional limits.  Debtor's sole reasoning for filing a Chapter 12 case, even after Debtor's concession, is that the petition was filed "as an emergency filing to stave off a *scheduled* nonjudicial foreclosure." (Debtor's Motion to Convert, ¶ 2) (emphasis added).  Debtor has not provided the Court with a response to the Trustee's assertion that Debtor also did not qualify as a debtor under Chapter 12 because Debtor has no current farming income.

Debtor's assertion that the nature of the emergency filing did not permit Debtor to verify his debts prior to filing lacks any merit.  First, Debtor must have been aware that his debts were close to the jurisdictional limits and would require additional investigation prior to filing due to Debtor's *two* previous filings.  Further, Debtor used the same attorney in all three bankruptcy cases so Debtor's attorney should have also been knowledgeable that the Debtor was close to the debt limit.  Based on the previous two bankruptcy cases, filing a Chapter 12 without verifying the Debtor's debts appears to be a willful attempt to circumvent the Bankruptcy Code.

Second, Debtor has exhibited a pattern of filing a petition without the required schedules and requesting that the court grant an extension.  In all three of Debtor's cases, all three with the

same attorney, Debtor has failed to file the required schedules with the petition and has requested an extension to the deadline to file such schedules. Such a pattern reflects that the "emergency filing" excuse in Debtor's Motion to Convert was not the reason Debtor did not file the schedules with his Chapter 12 petition in the instant case. Rather, Debtor has a history of taking advantage of this procedure to further delay and stall each Bankruptcy case.

Third, the nonjudicial foreclosure was a "scheduled nonjudicial foreclosure." Accordingly, Debtor had ample time to prepare his schedules and determine which chapter under the Bankruptcy Code for which the Debtor qualifies. The excuse that the case needed to be filed as an emergency filing holds no merit when considering that a nonjudicial foreclosure requires three months' notice of default and 21 days-notice of the date of the foreclosure. Further, an escrow to sell the Davis Road Property and satisfy most if not all of Debtor's creditors had been pending since the end of August. Debtor had ample opportunity to close the escrow for the Davis Road Property or if he knew that he did not want to close the escrow for the Davis Road Property to investigate his eligibility for each bankruptcy chapter.

Lastly, Debtor has offered no opposition to the Trustee's valid assertion that Debtor does not qualify as a debtor under Chapter 12 since Debtor has no current farming income. Surely Debtor cannot assert that the emergency nature of the filing did not permit Debtor time to evaluate whether or not he had any current income. Once again this point is exasperated because the Trustee had already raised this argument in the Debtor's previous Chapter 12 case, the Debtor's circumstances had not changed, and the Debtor utilized the same attorney that represented him in the previous Chapter 12 case.

    C.    <u>If Debtor's Chapter 12 Case is Dismissed the Court should Bar Debtor from Filing a Bankruptcy under any Chapter for 180 Days.</u>

Debtor has asserted that permitting the Debtor to convert the instant case to a case under Chapter 11 is equitable because if the Debtor's case is dismissed "he would almost certainly refile the case." (Debtor's Memorandum of Points and Authorities In Support of Debtor's Motion to

8

Creditor Panella Properties, Ltd's, Opposition to Debtor's Motion to Convert Chapter 12 Case to Chapter 11

Convert, Page 3, Line 27).  In light of debtor's stated intention to file a fourth bankruptcy case if the instant case is dismissed, the Court should bar the Debtor from filing a future bankruptcy case under any chapter for a period of 180 days.

　　　　The Court may bar or prohibit the debtor from filing a future bankruptcy case under either § 109(g) or § 105(a).  §109(g) permits the Court to bar future filings where the Debtor has willfully failed to abide by court orders.  Cases have determined that the deliberate filing and refiling of the same case can be inferred as a willful failure to abide by court orders.  In the instant case, Debtor filed a Chapter 12 petition even though there is no conceivable way Debtor could have believed he qualified for Chapter 12 (due to debtor's amount of debts and that Debtor has *no* farming income, see Section B above).  Debtor's filing of a Chapter 12 case without merit has delayed creditor action for 70 days.  Debtor willfully filed an improper chapter with the intent to defraud, delay, and hinder creditors and this Court.

　　　　Further, the court may bar the Debtor from future filings through its equitable powers of § 105(a), which permits the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Such a bar is necessary in this case in order to ensure the Debtor does not file a fourth bankruptcy case immediately after dismissal of the instant case.  Additionally, such a bar is warranted due to the Debtor's bad faith filing of the instant Chapter 12 case.

　　　　If the Court does issue a bar on filing, Panella additionally warns the Court that Debtor may attempt to have his spouse file a Chapter 7, 11, 12, or 13 and take advantage of the co-debtor stay.  Panella is unaware of any way to prohibit such an action in this case.  However, if such a maneuver is undertaken by the Debtor and Debtor's spouse, Panella requests the Court, the Trustee, and the United States Trustee investigate such an action as criminal bankruptcy fraud.

**2. If the Court Grants Debtor's Motion to Convert, Conversion Should Be Contingent upon Debtor Completing the Sale of the Davis Road Property no later than February 28, 2017.**

Due to the Debtor's filing history, if the Court grants Debtor's Motion to Convert, such conversion should be contingent on the Debtor expeditiously prosecuting the Chapter 11 case to ensure the Davis Road Property is sold to Panella prior to February 28, 2017. After February 28, 2017, Panella will be forced to terminate the agreement to purchase the Davis Road Property due to Debtor's failure to close and focus efforts on a new property to purchase as the replacement property in Panella's tax exchange. Placing strict timelines on the Debtor to prosecute the Chapter 11 case would be in the best interest of the Debtor and all Creditors as it is the only method of ensuring the Debtor prosecutes the case while he still has a buyer of the Davis Road Property. Without such contingencies placed on Debtor's conversion, Debtor stands in the position to wait until after February 28, 2017, when debtor no longer has a purchaser for the property, and propose a plan whereby Debtor finds a future buyer for the property to satisfy creditor claims (similar to the Chapter 12 plan that Debtor proposed in Debtor's first Chapter 12 filing). Such actions would only continue to hinder and delay all creditors and permit the Debtor to stay within the protections of the automatic stay. The court has the power to make such an order under the equitable power of § 105 in order to "prevent an abuse of process" by the Debtor.

## IV. CONCLUSION

Due to the nature of the instant case and Debtor's prior filings, Debtor's Motion to Convert must be closely scrutinized. Debtor has provided little to no argument to show why the instant case was not filed in bad faith. Accordingly, Debtor's case should either be dismissed or, if converted, placed on strict timelines to ensure Debtor completes the stated plan of selling the Davis Road property prior to the time that Panella must terminate the agreement due to Debtor's breach. If the instant case is dismissed, the court should bar the Debtor from filing a future bankruptcy for a period of 180 days to bar the Debtor's stated intention of refiling immediately upon dismissal. If the Court elects to convert the case to Chapter 11, the Court should put the Debtor on notice that if the

case is later dismissed due to the Debtor's failure to prosecute pursuant to the timelines set by the Court, then the Court will bar future filings at the time of dismissal and consider sanctions against the Debtor and Debtor's attorney. The Court needs to ensure the Debtor cannot continue to abuse the Bankruptcy protections in order to defraud, hinder, and delay creditors.

WHEREFORE, Panella prays that the Court deny Debtor's Motion to Convert Chapter 12 case to Chapter 11 and grant Trustee's Motion to Dismiss and for such other further relief as the Court deems just and proper.

Dated:  January 27, 2017                    CALONE & HARREL LAW GROUP, LLP

                                            By: /s/ Keith Wood
                                                Keith Wood
                                                Attorney for Creditor
                                                Panella Properties, LTD.